## CHRISTOPHER C. SMITH *et al.*

### *v.*

### JAMES W. OSBORNE *et al.*

TENANTS IN COMMON—*purchase of title under incumbrance, by one.* Where a party interested in land as a devisee under a will makes a contract to buy the certificate of purchase of the land, it having been sold under a decree foreclosing a mortgage given by the devisor in his lifetime, and tenders the sum agreed to be paid for the certificate in apt time, he will be entitled to a decree for the transfer of such certificate as against the holder thereof, but not so as to cut off the rights of the other devisees, and such other parties should be allowed to protect their interests in the land by contributing their ratable share of the purchase money, if they so desire, and for that purpose they may file a cross-bill.

WRIT OF ERROR to the Circuit Court of Kane County; the Hon. HIRAM H. CODY, Judge, presiding.

In 1870 John C. Smith (now deceased), being the owner of the land in dispute in this suit, and residing upon the same with his then wife, Clarinda Smith, borrowed of Osborne, who lived in Pennsylvania, the sum of $2,500, and to secure the same he and his wife joined in a mortgage of the premises to Osborne, which was duly acknowledged, and her right of dower and the homestead right were duly released.

In 1872 Mr. Smith, still occupying the premises as a homestead, died leaving a will. At his death he left him

surviving, his widow, Clarinda Smith, and their infant daughter, Jane Etta Smith, and also four children by a former wife — that is, Christopher C. Smith, Clark Smith, Charles Smith, and Mrs. Hattie Parsons, the wife of James Parsons. These five children were his only heirs. After his death his widow, Clarinda Smith, was married to James Crosby, and at the time of this suit she and her husband, and her daughter, Jane Etta Smith, were living upon the land in question. At his death Mr. Smith left but little personal property, and it was all set apart to his widow as her "widow's award," and the mortgage debt remained unpaid. The will was duly probated, and provided as follows:

"First, after all my lawful debts are paid, satisfied, and discharged, the rest and residue and remainder of my estate, real and personal, I give, devise, bequeath, and dispose of as follows:

"I give to my beloved wife, Clarinda Smith, one-third part of all the personal property, money, choses in action, goods and chattels of every name which I shall be the owner of at the time of my death, to have and to hold to her own use and benefit forever. I also give to my said wife the life use of one-third part of all my real estate, etc., and at her death it is my will and desire that the said third part of my real estate above spoken of shall be equally divided between my two sons Clark Smith and Charles Smith.

"The rest and residue of my estate, both real and personal, of every name, I give to my two sons Clark Smith and Charles Smith, to be divided equally between them.

"Provided, that in case either one of them shall die before reaching age, it is my will that the one surviving shall take and hold the whole bequeathed to both; and provided, also, that in case both of my said sons should die before reaching the age of twenty-one years, then it is my will that the property hereby bequeathed to them shall descend to my daughter Hattie Parsons, to be taken and held by

her as her own property and estate forever. But in any event it is my will and desire that so much of my said estate as shall be necessary for the proper care and maintenance of my said sons, or either of them, shall be used so long as they, or either of them, shall live."

Date of will, November 27, 1868.

At the October term, 1873, of the circuit court of Kane county (where the land lies), Osborne, in a suit in chancery in which all parties in interest were made parties, procured a decree of foreclosure upon his mortgage. The amount of the mortgage debt unpaid was found by the decree, and the master was ordered to make sale of the property.

On December 18, 1873, the sale was made, and Osborne became the purchaser at $3,021.12 (the then amount of debt, interest, and costs), and received the usual certificate of purchase, entitling him to a deed at the end of fifteen months, unless the property should be redeemed.

Christopher C. Smith was the oldest of these children, and lived in Chicago, and after his father's death had managed and had the care of the property interests of his sister Mrs. Parsons, and his brothers Clark Smith and Charles Smith, the latter of whom was still a minor and lived with Christopher.

About November 1, 1874, Osborne sent to one Samuel McNair his certificate of purchase, with a letter authorizing him to sell the same. He it seems first negotiated with Mr. Crosby in behalf of Mrs. Crosby, and by the Crosbys was offered a premium of $50 for an assignment of the certificate. He then wrote to Christopher C. Smith, advising him that the certificate was in his hands for sale to any one who would give the most for it. In answer to this letter Christopher C. Smith soon after visited McNair at his residence in Kane county, and it was then and there agreed between Christopher C. Smith (who was acting in behalf of his brothers and his sister Mrs. Parsons) and Samuel McNair (who was acting as the agent of Osborne), that Osborne would sell and transfer to Christopher C. Smith this

certificate of purchase, for which Smith undertook to pay a premium of $100, and to pay the amount of the redemption money which Osborne had a right to on the face of the certificate. Smith paid to McNair the $100, which was accepted, and it was agreed that he should thereafter pay the redemption money and then have the certificate transferred to him or transferred in blank, as he might desire.

Some time in January, 1874, an agreement of some kind was made between Osborne (through McNair as his agent) and Mrs. Crosby and her husband, relating to the purchase of the interest of Mrs. Crosby in this land by Osborne, for the sum of $1,300.

On March 17, 1874, Christopher C. Smith tendered to McNair $3,400, and demanded the certificate, which was refused, Smith claiming the right to redeem the property under his agreement, and McNair insisting that he came too late.

About March 18, 1874, the master made a deed of the premises to Osborne.

This is a bill filed by plaintiffs in error, seeking to compel Osborne to accept the $3,400, and surrender the land.

The controversy in the case relates to the nature and terms of the contract made in November, 1873, between McNair and Christopher C. Smith, and they differ only as to the time within which the amount of redemption money was to be paid by Smith.

Smith testifies that, on the day after he made the agreement to give a premium of $100 for a transfer of the certificate, he made payment of that sum, and that at the time of that payment he asked McNair how long we could have on the balance (the face of the certificate and interest) ; he said, no hurry for the face of the certificate, as he had the $100 which bound the bargain. We discussed as to how long my claim would hold good. I said I would have to come out before redemption expired. He said, yes ; that the certificate would draw interest until I paid it; I had better pay it as soon as I could. I said, " How long shall I have to

39 — 86TH ILL.

redeem?" He said, "You will have until the time of redemption expires; I am in no hurry, but you had better do it as soon as possible and stop interest;" that the certificate drew interest, and I had better pay it as soon as I could.

Samuel McNair testifies that when Smith agreed to give the $100, he said that he had the money in Chicago and could get it. I told him if he would pay the $100, as a forfeiture, I would *hold* it for him; that on Monday, the 9th of November, he came with the $100 and paid it, and he was to come in a day or two to obtain an assignment of the certificate, which was to be to some third person, and if he did not come, the $100 was to be a forfeiture. He wanted a receipt; I said I was to keep the money, and if he did not come, I was to have it as a forfeiture. Nothing was said about redeeming the property or extending the time of redemption. The witness further testifies that he saw Smith some three or four months after, and he then said he could not raise the money according to agreement, but said he was going to redeem according to decree, as his lawyer said he could. He came again and offered the money to redeem. I refused to take it. At this conversation I asked him if he called this a day or two. On cross-examination, as to the first conversation after the time the $100 was paid, this witness says: "I don't recollect that Smith said he intended to redeem according to his *arrangement* with me * * * he *might have* so stated."

A colored man in the service of McNair at the time was present when the $100 was paid, and testifies that if Smith did not in a few days pay the amount of the certificate, the $100 was to be forfeited; that that was the talk.

Christopher C. Smith, recalled, says: When he spoke of the time of redemption in his talk with McNair, he meant fifteen months; but no particular time was mentioned specially; that in the first conversation after the occasion of the payment of $100, he told McNair that he intended to redeem the land according to his agreement with McNair, and that no particular time was agreed on between them

when he was to pay the face of the certificate and interest, but that he was to have the full time of redemption; that the word forfeiture was not used, to his recollection; that the agreement was made before they entered the house; that the $100 was paid in the house, and it occupied a very short time.

This is the substance of all the evidence on this disputed point.

Mr. J. H. MAYBORNE, for the plaintiffs in error.

Mr. W. D. BARRY and Mr. W. J. BROWN, for the defendants in error.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

A careful comparison of this testimony leads us to believe that the substance of the bargain between McNair and Smith about the assignment of the certificate was, that on payment of a premium of·$100, McNair·agreed to hold the certificate for Smith, and that, at any time before the expiration of the time which the purchaser had by law to hold the certificate for redemption, McNair was to assign the certificate to Smith upon the payment of the amount of the purchase money, and interest thereon at the rate of ten per cent per annum from the date of the purchase to the time of payment; and that if Smith failed to pay the amount of the redemption money within that time, he should lose all benefit from the payment of the $100.

In connection with this bargain it is very probable there was conversation in which McNair suggested to Smith that it was to his interest to pay it soon so as to stop the interest, and in which Smith asserted his ability to furnish the money at any time, and his intention to do so in a few days; and it is probably true that afterwards he stated that he had not been able to raise the money as soon as he expected, but would raise this redemption money within the time when the property, by law, would ·be past redemption.

This seems plainly to be the fair inference from this testimony — when carefully scrutinized. — upon the hypothesis that the witnesses all intend to tell the truth. This hypothesis reconciles and leaves to stand as true the substance of all the testimony given — making allowance for slight inaccuracies in the mode of stating the same. McNair does not deny directly what Smith states as to the conversation about the time within which he was bound by their bargain to pay the amount of the redemption money. He says, it is true, that "he was to come in a day or two to obtain the assignment of the certificate." That, no doubt, was true in the sense that Smith said that he expected to do so. He does not deny that he told Smith there was no hurry, etc. If the expression used between them, as to the utmost limit of time contemplated, was "within the time of redemption," the fair construction of those words would allow the full fifteen months from the sale, for they both agree that it was not redemption which was the subject matter of the trade, but an assignment of the certificate. If the balance of the weight of the evidence were but slight in support of this hypothesis, the court should be inclined to adopt it in view of the injustice which would otherwise be accomplished.

When, therefore, Christopher C. Smith, about the 15th or 16th of March, 1875, tendered to McNair the amount of $3,400, he offered to comply with his bargain in apt time, and complainants, upon the payment of that sum, are entitled to have transferred to them, or some one in trust for them, all the title which Osborne acquired by the master's deed.

Equity, however, will not permit the complainants, even if they desire so to do, to cut off by this purchase or proceeding the rights of Mrs. Crosby. By the will she has a life estate in one-third of the lands. This mortgage debt was an incumbrance upon the whole estate in the land. Justice demands that the present value of the interest of Mrs. Crosby, and the present value of the interests of each

of the complainants who have any beneficial interest in the property under the will, should be ascertained, and that each should be allowed to protect his or her interest by contributing his or her share of the purchase money to be paid by Christopher C. Smith for this title (embracing the $100 paid to McNair). Mrs. Crosby (or her assignee) is not bound to join in this purchase, but they should have the privilege of so doing. The decree must be reversed and the cause remanded to the circuit court to adjust the rights of the parties in accordance with these views. Such amendments of the pleadings should be allowed as may comport with the facts as here held, and as may be necessary for the protection of the rights of all parties. Mrs. Crosby (or her assignee, if she has made an absolute sale) should be allowed, if desired, to file a cross-bill asking to share the benefits of the purchase of this certificate upon paying her proper quota of the money; if parties other than those represented by Christopher C. Smith do not wish to share in this purchase upon the terms indicated, then complainants should have a decree granting to them, on payment of the $3,400, the full title conveyed to Osborne by the master in chancery, and should be put in possession under that title.

*Decree reversed.*